UNITED STATES of America, Plaintiff,

v.

Louis SERAFINI, et al., Defendants.

Civ. A. No. 86–1591.

United States District Court,
M.D. Pennsylvania.

Feb. 18, 1988.

See also 706 F.Supp. 354.

Bruce Brandler, Asst. U.S. Atty., Scranton, Pa., Robert R. Kuehn, Steven R. Baer, Environmental Enforcement Section, Land and Natural Resources Div., U.S. Dept. of Justice, James Dougherty, Office of Enforcement & Compliance Monitoring–Waste, U.S. Environmental Agency, Washington, D.C., for plaintiff.

David J. Rinaldi, Scranton, Pa., for O.S. C. Co., J.C. Baumann, D. Bridy, C.E. Rinaldi, Trustee for C.A. Fisher, A.J. Rinaldi and D.J. Rinaldi.

Brian J. Cali, Robert A. Cecchini, Scranton, Pa., for Louis Serafini, Alfred Bernabei, Ernest Buttafoco, Michael J. Naples, Jr., Individually and t/a Empire Contract. Co.

Allan J. Topol, Richard J. DeSanti, Covington & Burling, Washington, D.C., for American Can Co.

## MEMORANDUM

CALDWELL, District Judge.

*Introduction*

This is an action brought under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, for injunctive relief and recovery of the federal government's response costs in connection with the cleanup of a hazardous waste site in Taylor, Pennsylvania. Before the court is

the government's motion for partial summary judgment against defendants Serafini, Bernabei, Buttafoco and Naples, individually and trading as the Empire Contracting Company ("Empire defendants"), on the issue of liability for response costs under section 107 of CERCLA, 42 U.S.C. § 9607. For the reasons that follow the government's motion will be denied.

*Background*

The Taylor hazardous waste site is a tract of land consisting of approximately 125 acres located in Taylor Borough, near Scranton, Pennsylvania. In May, 1967, the Parmoff Corporation leased a portion of the site to the City of Scranton for the purpose of dumping garbage and refuse. Until at least March 31, 1968, Scranton operated a sanitary landfill and waste disposal site on the leased premises. On December 12, 1969, the Parmoff Corporation sold all but a small portion of its interest in the Taylor site to the Empire Contracting Company, a partnership wholly owned by the Empire defendants. According to the fictitious name certificate filed in February, 1966, in Lackawanna County, the Empire Contracting Company was created "[t]o buy, sell, manufacture, lease, service any and all kinds and types of real and personal property, to act as contractor, subcontractor and developer with respect to any and all kinds of work, including but not limited to buildings, improvements, roads, bridges, mining, drilling, flushing and otherwise." The Empire defendants are the current owners of a portion of the Taylor site.

Beginning in 1981, the United States Environmental Protection Agency ("EPA") and the Pennsylvania Department of Environmental Resources conducted various surveys and investigations at the Taylor site. According to the uncontested affidavit of Michael Zickler, the EPA on-scene coordinator assigned to the site, in October and November, 1983, EPA conducted an immediate removal action under section 104 of CERCLA, 42 U.S.C. § 9604. Approxi-

mately 1,141 fifty-five gallon drums were scattered across and under six separate areas of the site. Many were open, crushed, completely or partially buried, and in various stages of decay. Samples from the drums, as well as soil and water samples, were sent to the EPA laboratory in Annapolis, Maryland. Laboratory analysis revealed that 847 drums contained hazardous substances as defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14),[1] 105 drums contained non-hazardous substances, and 189 were contaminated with residues.

The government instituted this action on November 10, 1986, seeking injunctive relief and recovery of response costs. On July 20, 1987, the court entered a consent decree negotiated between the United States and four defendants requiring the defendants to complete the remedial work at the Taylor site. On September 25, 1987, the court granted the United States' motion for partial summary judgment on liability for federal response costs against the City of Scranton. The government has filed a similar motion now against the Empire defendants.

*Discussion*

A. The Summary Judgment Standard

A court shall render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which might affect the outcome of a suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Factual disputes that are irrelevant or unnecessary are not to be considered. *Id.* While the materiality inquiry addresses the substantive law, it is only the substantive law's identification of which facts are crit-

---

**1.** According to the uncontested affidavit of Daniel K. Donnelly, Laboratory Section Chief at the EPA's Central Regional Laboratory in Annapolis, Maryland, the hazardous substances included toluene, trichloroethylene, ethylbenzene, butyl benzyl phthalate, phenanthrene, and methylene chloride.

ical and which facts are irrelevant that controls. Any proof or evidentiary requirements imposed by the substantive law are not germane. *Id.*

Summary judgment will not lie if the dispute as to a material fact is "genuine," that is, "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212. An adverse party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. [*First National Bank v.] Cities Service [Co.],* 391 US [253] at 288–289, 88 S Ct 1575, [1592] 20 L Ed2d 569 [ (1968) ]. If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 US 82, 87 S Ct 1425, 18 L Ed2d 577 (1967) (per curiam), or is not significantly probative, *Cities Service,* supra, [391 U.S.] at 290, 88 S Ct 1575, [1592] 20 L Ed2d 569, summary judgment may be granted.
>
> . . . .
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 US 476, 479–80, 64 S Ct 232, [234] 88 L Ed 239, (1943). If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed. *Wilkerson v. McCarthy,* 336 US 53, 62, 69 S Ct 413, [417] 93 L Ed 497 (1949).
>
> . . . .

[T]he "genuine issue" summary judgment standard is "very close" to the "reasonable jury" directed verdict standard: "The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted." [*Bill Johnson's Restaurants, Inc. v. NLRB,* 461 US 731, 745, n 11, 103 S Ct 2161, [2171, n. 11] 76 L Ed2d 277] (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Anderson,* 477 U.S. at 249–52, 106 S.Ct. at 2511–12, 91 L.Ed.2d at 212–14. In making that determination, the court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538, 553 (1986).

## B. Prima Facie Case for Liability Under CERCLA

Congress enacted CERCLA in 1980 in response to the environmental and public health hazards posed by improper disposal of hazardous wastes. In general terms, the statute established the "Superfund," which is financed primarily through excise taxes on the oil and chemical industries.[2] The federal government is authorized to use the Superfund to finance governmental responses to hazardous waste problems, to pay claims arising from the response activities of private parties, and to compensate federal or state governmental entities for damages to natural resources, 42 U.S.C. § 9611(a). The government may then recover Superfund expenditures from those responsible for the generation, transporta-

---

**2.** Section 517 of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. 99–499, § 517, 100 Stat. 1772 (1986), established the Hazardous Substances Superfund,

which is in effect a continuation of the Hazardous Substance Response Trust Fund established by section 221 of CERCLA, 42 U.S.C. § 9631 (repealed).

tion or disposal of the hazardous substances. 42 U.S.C. § 9607(a).

█ Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in part, as follows:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable....

In construing the terms of section 107(a), the courts have uniformly imposed strict liability, subject only to the defenses set forth in section 107(b). *Artesian Water Co. v. Gov. of New Castle County*, 659 F.Supp. 1269 (D.Del.1987). Accordingly, in this case, a *prima facie* case under section 107(a) is established if the United States shows that:

1. the site is a "facility";[3]
2. a "release" or threatened release of a "hazardous substance" from the site has occurred;[4]
3. the release or threatened release has caused the United States to incur "response costs";[5] and
4. the defendants are "owners" of a facility.[6]

*United States v. Maryland Bank & Trust Co.*, 632 F.Supp. 573 (D.Md.1986).

█ It is clear from the materials before the court that the government has made a prima facie case. The Empire defendants admit the first three elements and challenge only the government's assertion that they are owners of a facility. Yet in their answer to the complaint, they admitted that on December 12, 1969, they purchased all but a small portion of Parmoff's interest in the Taylor site and that they have owned a portion of the site ever since. They further admitted that the land they bought from Parmoff was the parcel that Parmoff had previously leased to the City of Scranton for use as a refuse disposal area. As discussed below, the defendants' argument

---

**3.** 42 U.S.C. § 9601(9) defines "facility" as follows:

The term "facility" means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

**4.** 42 U.S.C. § 9601(22) defines "release" as follows:

The term "release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching,

dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)....

42 U.S.C. § 9602(a) provides that the EPA shall promulgate regulations designating materials as hazardous substances. The regulations at 40 C.F.R. § 302.4 designate substances found at the Taylor site as hazardous substances.

**5.** "Response" means "remove, removal, remedy and remedial action," including "enforcement activities related thereto." 42 U.S.C. § 9601(25).

**6.** "Owner" means "in the case of an onshore facility ..., any person owning or operating such facility...." 42 U.S.C. § 9601(20). The term "person" includes an individual and a partnership. 42 U.S.C. § 9601(21).

is aimed, not at challenging the government's prima facie case, but at establishing one of the three defenses set forth in section 107(b).

### C. Affirmative Defense to the Prima Facie Case

Section 107(b) provides as follows:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act of omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

The Empire defendants have raised the "third party" defense in paragraph 3, and under the facts of this case, must prove by a preponderance of the evidence that:

1. the release or threat of release of a hazardous substance and the resulting damages were caused solely by an act or omission of a third party;

2. the third party's act or omission did not occur in connection with a contractual relationship (either direct or indirect) with the defendants;

3. the defendants exercised due care with respect to the hazardous substance; and

4. the defendants took precautions against the third party's foreseeable acts or omissions and the foreseeable consequences resulting therefrom.

Of the four elements of the defense, the government seriously challenges only the second, and asserts that a contractual relationship existed, presumably between the Empire defendants and the Parmoff Corporation. The defendants argue that the entry of summary judgment would be improper because there are genuine issues of fact concerning the existence of that contractual relationship, as that term is defined in CERCLA.

As originally enacted, CERCLA, or more specifically, section 107(b), was unclear as to the liability of owners of contaminated property who were innocent of any involvement with the disposal of hazardous substances. The 1986 SARA amendments attempted to clarify section 107(b), not by amending it directly, but by adding to section 101 a lengthy new subsection defining the previously undefined term, "contractual relationship." Section 101(35)(A) provides, in relevant part, as follows:

(35)(A) The term "contractual relationship", for the purpose of section 9607(b)(3) of this title includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession, unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility, and ... the circumstances described in clause (i) ... is also established by the defendant by a preponderance of the evidence:

(i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.

The new definitional provision also specifies at section 101(35)(B):

> To establish that the defendant had no reason to know, as provided in clause (i) of subparagraph (A) of this paragraph, the defendant must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. For purposes of the preceding sentence the court shall take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presence of contamination at the property, and the ability to detect such contamination by appropriate inspection.

As stated earlier, the Empire defendants have admitted that they received from Parmoff title to land comprising part of the Taylor site. Furthermore, it is not disputed that they acquired the land after the disposal of the hazardous substance had already occurred. The government contends, however, that at the time they purchased the land, the Empire defendants had reason to know that hazardous substances had been deposited at the Taylor site, and thus there exists a "contractual relationship" negating the use of the innocent landowner defense. In essence, the government's position is that the Empire defendants failed to undertake, at the time of acquisition, "all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice" as required by section 101(35)(B). The government's argument is two-pronged. First, it contends that the Empire defendants had reason to know of the site's condition because at the time they purchased the land in 1969, it was obviously and visibly contaminated, and any site visit would have revealed hundreds of abandoned drums on the surface. Second, the government asserts that since defendant Serafini was the Secretary of the Parmoff Corporation at the time the Empire defendants purchased a portion of the site from Parmoff, they possessed "specialized knowledge" of the site's condition.

■ With respect to the government's first argument, the evidence submitted with and in response to the government's motion shows that at the time the defendants purchased the Taylor site, it was littered with drums which were visible to the naked eye. On November 17, 1982 counsel for Empire wrote to the Environmental Protection Agency, stating that the hazardous waste at the Taylor site was not Empire's responsibility because "these barrels were on the property prior to any purchase made by Empire Contracting Company.... Please note the enclosed photos, our photos, which indicate proof to this averment." Attached to Empire counsel's letter were two photographs showing drums scattered across the surface of the site. Subsequent correspondence from Empire Contracting Company on September 22, 1983 also mentioned photographs of the site "taken on October 4, 1968" as proving that the abandoned drums on the property were there prior to the Empire defendants' purchase. Furthermore, in order to obtain this and other evidence regarding the condition of the site when it was purchased in 1969, the United States served the Empire defendants with a request that they admit that "On December 12, 1969 the cylindrical metal drums present at the Site were visible to the naked eye." The Empire defendants did not respond, thereby conclusively establishing, for purposes of this litigation, that at the time they purchased the land from the Parmoff Corporation, abandoned drums were plainly visible.[7]

---

7. Earlier in this litigation, the court applied Federal Rule of Civil Procedure 36(b) to another party's failure to respond to requests for admissions, and held that matters as to which unanswered admissions were requested are conclusively established for purposes of this litigation. The discussion of Rule 36(b) in the court's September 25, 1987 order need not be repeated here.

■ The Empire defendants' contend that the mere showing that the drums were visible is not enough to establish that they knew or had reason to know that hazardous substances had been deposited at the site. Their affidavits indicate that at the time of the purchase they did not conduct an on-site inspection, nor did they have any reason to do so. They assert that the purchase involved the inspection of various maps to determine the location of the 225 acres and that it was not until 1980 or 1981, when the EPA conducted its investigation, that they became aware of the existence of the 1968 photographs.

The government counters that the defendants' affidavits cannot create issues as to whether they knew or had reason to know of the presence of hazardous waste at the Taylor site because landowners cannot avail themselves of the innocent landowner defense by closing their eyes to hazardous waste problems. The government argues that the defendants had no knowledge of the clearly visible drums only because they failed to inspect the premises prior to purchasing it and they made no inquiry into the past uses of the site. The government posits that SARA's innocent landowner defense does not protect the owner who fails to inspect the land or fails to inquire into its current condition or past history.

Although the government's argument is tempting, the court cannot reach that conclusion on the record before it. Section 101(35)(B) requires a landowner to have undertaken "all appropriate inquiry ... consistent with good commercial or customary practice" and lists several factors to be considered in making that determination. After analyzing the evidence in the light of those factors, the court is unable to find that the defendants' inaction was inappropriate under the facts of this case. The government has presented no evidence from which the court can conclude that the

defendants' failure to inspect or inquire was inconsistent with good commercial or customary practices.[8] Thus, there exists unresolved questions of fact as to the propriety of the defendants' conduct at the time of the purchase.

The government next argues that, beyond the apparent conditions at the site, there is additional evidence demonstrating knowledge of the site's previous use. Specifically, the government asserts that since defendant Serafini acting in his capacity as the Secretary of the Parmoff Corporation, signed the lease granting the City of Scranton the right to use the land as a rubbish dump, he possessed the kind of "specialized knowledge" of the previous use of the land contemplated by section 101(35)(B). Serafini's affidavit, however, states that he was only Acting Secretary of the corporation as a convenience to the owners, and that he was neither an officer nor director. He claims he had no personal knowledge of the operation of the corporation or of the management of the corporation's real estate holdings and asserts that he executed documents only as a witness to the signatures of the corporation's officers. The copy of the lease submitted by the government supports Serafini's contention in that his signature appears on a line labeled "ATTEST." Thus the evidence before the court does not clearly show the relationship between Serafini and Parmoff. Questions still exist as to whether Serafini knew the contents of the lease or that the Taylor site was used as a landfill by the City.[9]

*Conclusion*

For the foregoing reasons the United State's motion for partial summary judgment on the issue of liability against defendants Serafini, Bernabei, Buttafoco and Naples will be denied. However, the court finds that the United States has established a prima facie case of liability under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

8. For example, the government could have submitted affidavits from real estate developers stating that, with respect to the purchase of a 225 acre tract to be developed at a later date, it is the customary or good commercial practice to visually inspect the property before the purchase.

9. Having so found, we need not address the government's somewhat tenuous assertion that knowledge of the existence of a sanitary landfill gave Serafini reason to know of the existence of hazardous wastes on the premises.

The Empire defendants will have opportunity to present affirmative defenses under section 107(b), 42 U.S.C. § 9607(b), at trial.