**UNITED STATES of America, Plaintiff,**

v.

**PACIFIC HIDE & FUR DEPOT, INC., a Montana corporation, d/b/a Pacific Steel Hide Recycling Company; William N. McCarty; Betty McCarty; Michael McCarty; Terry McCarty; Sherry McCarty Christianson; Richard McCarty; Dayna McCarty; McCarty's, Inc., an Idaho corporation, and Idaho Power Company, Defendants.**

Civ. No. 83–4052.

United States District Court,
D. Idaho.

March 13, 1989.

Marc Haws, Asst. U.S. Atty., Boise, Idaho, Robert R. Homiak, Robert H. Foster, U.S. Dept. of Justice, Lands & Natural Resources Div., Environmental Section, Washington, D.C., for U.S.

David M. Heineck, Office of Regional Counsel, U.S.E.P.A., Seattle, Wash., Frances McChesney, U.S.E.P.A., Washington, D.C., for E.P.A.

William J. Keppel, Dorsey & Whitney, Minneapolis, Minn., R.B. Rock, Donald J. Farley, Robert B. Luce, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for Pacific Hide.

George A. Southworth, Herzog & Roche, Pocatello, Idaho, for Richard & Dana McCarty.

W.F. Merrill, Kim B. Loveland, Merrill & Merrill, Pocatello, Idaho, for Michael, Terry McCarty & Sherry Christianson.

William N. and Betty McCarty, Pocatello, Idaho, pro se.

Bart W. Harwood, McKee, Harwood & McColl, Boise, Idaho, for William N., Betty, Michael, Terry, Sherry, Richard, Dayna, and McCarty's Inc.

Max Eiden, Jr., Clemons, Cosho, & Humphrey, Boise, Idaho, for William McCarty's Inc., Betty, Richard, & Dana McCarty.

David H. Maguire, Maguire, Ward, Maguire & Eldredge, Pocatello, Idaho, for William N. and Betty McCarty.

G. Lance Salladay, Risch, Goss, Insinger & Salladay, Boise, Idaho, for Idaho Power Co.

E. Lee Schlender, Ketchum, Idaho, Michelle Sales, David L. Ashbaugh, Oles, Morrison, Rinker, Stanislaw & Ashbaugh, Seattle, Wash., for Bucyrus–Erie Co.

Jack T. Hawley, Gary D. Babbitt, Hawley, Troxell, Ennis & Hawley, Boise, Idaho, for Morrison-Knudsen.

Louis F. Racine, Jr., Racine, Olson, Nye, Cooper & Budge, Pocatello, Idaho, for Monsanto Co.

## MEMORANDUM DECISION

CALLISTER, District Judge.

The Court has before it a motion for partial summary judgment and a motion to dismiss filed by the individual defendants. The Court also has a cross-motion for partial summary judgment filed by the plaintiff. The Court has heard oral argument and the motions are ready to be resolved. With regard to the motions for partial summary judgment, the Court must determine whether there exist any genuine issues of material fact. *See* Fed.R.Civ.P. 56(c).

In this action, the United States of America (Government) has sued the defendants to recoup costs incurred in cleaning up a recycling yard contaminated with polychlorinated biphenyls (PCBs). The Government's complaint contains a number of different causes of action under various statutes dealing with the disposal of hazardous wastes. The Government has sued three companies and seven individuals. The individual defendants have filed a motion for partial summary judgment seeking to dismiss a portion of one of these counts; specifically, the motion seeks to dismiss part of the claim under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.* The individual defendants characterize themselves as "innocent landowners" entitled to protection from CERCLA's provisions exposing them to liability for the cleanup cost. The Government has filed a cross-motion asserting that the innocent landowner defense is not available to these defendants. The Court will take up first these cross-motions for partial summary judgment after reviewing the facts of the case.

Defendant McCarty's, Inc., was formed in 1949 by Samuel McCarty for the purpose of operating a metal recycling scrapyard on a seventeen-acre parcel of property in Pocatello. In 1949, the only two shareholders of McCarty's, Inc., were Samuel and his wife. When Samuel passed away in 1966, a portion of the stock was devised to his children, S.R. McCarty, William McCarty, Richard McCarty, and Pat Eddy. In 1970, when Samuel McCarty's wife died, the remaining shares were distributed to S.R. McCarty, William McCarty and Richard McCarty. In 1975, McCarty's, Inc., redeemed Pat Eddy's shares leaving only three shareholders: S.R. McCarty, William McCarty and Richard McCarty.

Between 1970 and 1973, about 600 capacitors containing PCBs were disposed of in the recycling yard, specifically in an area known as the "gravel pit." During this time, the scrapyard was operated primarily by William and S.R. McCarty. The third shareholder, Richard, worked briefly in 1971 as an employee of McCarty's Inc., sorting copper. But after this, Richard was—to risk understatement—otherwise involved, as his affidavit establishes:

> Shortly after 1971 I went to school in New Jersey and as a conscientious objector worked in a nursing home. Then, I went to Panama and studied archeology, returning again to New Jersey and attending Temple University in Philadelphia until 1976. Then I went to the University of Nevada at Las Vegas.

> During the summer of 1976 I did work at the McCarty's site constructing a log cabin. I worked on the site for one and one-half months during the summer and had nothing to do with the salvage business at all.

> From May through October 1979, I worked with the United States Forest Service as the forest archeologist for the Humboldt Forest in Nevada.

*See* Affidavit of Richard McCarty filed May 13, 1988, at pp. 2–3.

This arrangement whereby S.R. McCarty and William McCarty operated the scrapyard in Richard's absence, continued until 1979 when a deal was struck with Pacific Hide & Fur, Inc., to sell a portion of the scrapyard property. The minutes of the stockholders' meeting of July 5, 1979, attached as Exhibit B to defendants' brief filed May 13, 1988, indicate that Richard was then elected as a director of McCarty's, Inc., to facilitate the sale to Pacific Hide & Fur Depot, Inc.:

> The chairman [William McCarty] advised that inasmuch as a substantial portion of McCarty's, Inc., was to be sold that Rich-

ard L. McCarty should be elected as a director of said company to serve with the existing directors of said company being William H. McCarty, Samuel R. McCarty and Ralph H. Jones, Jr., all of Pocatello, Idaho, and after discussion thereof, it was unanimously resolved to increase the board of directors of said company from three directors to four directors and Richard L. McCarty was unanimously elected as a director to serve with the existing board.

Richard's own affidavit then goes on to detail his duties after being elected director:

Even after being elected a director and officer of the corporation, I was not involved in the management or operations of the corporate affairs. At that time, McCarty's, Inc., had ceased doing business, selling most of its assets to Pacific Hide & Fur Depot, Inc., except for some of the site property.

When the corporation redeemed the shareholders' stock in September 1982 by quitclaiming some of the site property to the shareholders, I received an interest in the site real property equal to my percentage of stock ownership. Both prior to receiving an interest in the real property and, thereafter, I did not know and had no reason to know that electrical transformers or capacitors had been brought onto the site, and I did not know and had no reason to know that such equipment contained PCBs which have been alleged to be a toxic or hazardous substance. At all times I believed that McCarty's, Inc., was solely involved in the salvage of scrap metal and animal hides.

I have no knowledge of the actual operations of McCarty's, Inc., scrap metal business and at no time did I go to the piece of property where the dumping of the PCBs is alleged to have occurred.

*See* Affidavit of Richard McCarty filed May 13, 1988, at pp. 3–4.

In the 1979 sale transaction, Pacific Hide & Fur Depot, Inc., purchased the main office buildings and the rights to salvage any ferrous metals located in the gravel pit for four years. McCarty's, Inc., retained ownership of the gravel pit.

In March 1981, S.R. McCarty died. His stock in McCarty's, Inc., his separate property, was devised to his wife, Dayna McCarty. Her affidavit details her involvement with McCarty's, Inc.:

When my husband died, I inherited his one-third stock interest in McCarty's, Inc. Prior to that time, I had absolutely no involvement in the management or operations of McCarty's, Inc., and I had never been an employee of the corporation. Prior to inheriting my husband's stock interests, I had never attended a meeting of the shareholders, directors, or officers of McCarty's, Inc. I had no knowledge of the actual operation of McCarty's, Inc., scrap metal business.

When I inherited my husband's one-third stock ownership, I was elected secretary of the corporation to fill the secretariatship his death had left vacant. At that time, McCarty's, Inc., had ceased all business operations. Even though I was secretary of the corporation, I felt that I was simply an individual filling the label of "secretary" since I continued to have no involvement in the management or operations of the corporation.... Both prior to and after receiving an interest in the real property, I did not know and I had no reason to know that PCBs or any other substance considered hazardous had been brought onto the site. I have never had any knowledge concerning the actual operations of McCarty's, Inc., scrap metal business.

Both before and after receiving an interest in the real property, I did not know and had no reason to know that capacitors or transformers had been brought onto the site or that capacitors and transformers contain[ed] what was considered a hazardous substance.

I did not learn that the existence of PCBs on the site property was alleged until after the EPA [Environmental Protection Agency] had seized control of the site pursuant to an emergency response.

*See* Affidavit of Dayna McCarty filed May 13, 1988, at pp. 2–3.

In April 1982, William McCarty made a gift of one share of McCarty's, Inc., stock to each of his three children, Terry, Sherry, and Michael McCarty. During this time, McCarty's, Inc., was winding up its affairs. It had forfeited its charter in November of 1981, and in September 1982 it transferred its assets—including ownership of the gravel pit—to existing shareholders in return for redemption of their shares. The existing shareholders who became property owners in this transfer were William McCarty; Dayna McCarty; Richard McCarty; and Terry, Sherry and Michael McCarty. In December 1982, William McCarty transferred all of his interest in the property to Terry, Sherry and Michael McCarty by warranty deed. *See* Exhibit E to brief of defendants filed May 13, 1988.

The three children of William who each received a single share by gift and then redeemed that share for ownership when McCarty's, Inc., dissolved, were in their early–20's when the transfer occurred. The affidavit of Sherry McCarty is representative of their involvement with McCarty's, Inc.:

> I have never been an officer or director of McCarty's, Inc., and I have never been involved in the management or operations of that corporation. The only time I have ever been employed by McCarty's, Inc., was for eight hours in 1976 at the age of fifteen years when I helped with the construction of a log cabin. At some point in time later, I did help sort Indian beads in the office for approximately two hours. I have never attended a meeting of the shareholders, directors, or officers of McCarty's, Inc. I have no knowledge of the actual operations of McCarty's, Inc., scrap metal business.
>
> At all times both prior to and after receiving an interest in the site real property, I believed that McCarty's, Inc., was solely involved in the salvage of scrap metal and animal hides. I never knew or had any reason to know that transformers or capacitors contain[ed] a toxic substance or that they had been brought onto the McCarty's site. I never had any reason to believe that the operation of McCarty's, Inc., involved PCBs or any other hazardous substance.
>
> I did not learn that the existence of PCBs on the site property was alleged until after the EPA had seized control of the site pursuant to an emergency response.

*See* Affidavit of Sherry McCarty filed May 13, 1988, at pp. 2–3.

In March 1983, about six months after the stock transfer took place, federal agents discovered the capacitors in the gravel pit and found that "many of the PCB capacitors have been or were leaking PCB-laden liquid into the porous soil of the gravel pit." *See* Government's Second Amended Complaint filed June 19, 1988, at para. 17, p. 7. The EPA began clean-up efforts and removed 590 capacitors, twenty drums of waste, and "substantial amounts of PCB-contaminated soil" from the gravel pit. *Id.* at para. 22, p. 8. These efforts were funded from the Hazardous Substance Response Trust Fund authorized by CERCLA, 42 U.S.C. § 9631. The Government filed this suit seeking to recoup those costs and enjoin the defendants from any further PCB disposal.

The Government's complaint contains claims under the Toxic Substances Control Act; Resource Conservation and Recovery Act; and CERCLA. The present motions for partial summary judgment deal only with a portion of the CERCLA count, and thus the Court will turn its attention to that cause of action.

CERCLA was passed to protect public health and the environment. *See Ascon v. Mobil Oil,* 866 F.2d 1149 (9th Cir.1989). The Ninth Circuit has held that CERCLA's purpose "was to ensure the prompt and effective cleanup of waste disposal sites, and to assure that parties responsible for hazardous substances bore the costs of remedying the conditions they created." *Mardan Corp. v. C.G.C. Music Ltd.,* 804 F.2d 1454, 1455 (9th Cir.1986). CERCLA establishes a "superfund," financed through excise taxes on oil and chemical businesses, to fund cleanup efforts. CERCLA also empowers the Government to seek recompense for superfund expendi-

tures from those responsible for the disposal of the hazardous substances. *See* 42 U.S.C. § 9607(a). Those people who may be liable are set forth in 42 U.S.C. § 9607(a):

(1) The owner and operator of a vessel or a facility,

(2) Any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) Any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) Any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels, or cites selected by such person, from which there is a release, or a threatened release, which causes the incurrence of response costs, of a hazardous substance.

This statute therefore identifies essentially four categories of persons potentially liable for clean-up costs: (1) present owners and operators of the facility; (2) persons who owned or operated the facility at the time of the disposal of the hazardous waste; (3) persons—commonly called "generators"—who "arranged" by contract or otherwise for the disposal or treatment at the facility of a hazardous waste they owned or possessed; and (4) persons who transported a hazardous waste to the facility. The Government's complaint does not contain any allegation that the individual defendants were "generators" or "transporters." Instead, the complaint asserts that their liability is based on two prongs:

(1) their present ownership of the gravel pit or (2) their ownership of the pit at the time of the "disposal" of hazardous waste. *See* Government's Second Amended Complaint, *supra* at para. 55 and 62.

■ The Court will turn first to the "current ownership" prong of the Government's case against the individual defendants. William and Betty McCarty are not current owners. William transferred all of his interest to his three children by warranty deed in December 1982. His wife, Betty, never had any ownership interest in the property.[1] The Government concedes that the current ownership prong does not expose William and Betty McCarty to liability. *See* Government's Brief filed August 2, 1988, at pp. 3–4, n. 5. The defendants Richard McCarty, Dayna McCarty, Terry, Sherry and Michael McCarty are all current owners. There has been no argument that the site is not a "facility" and that a release of a "hazardous substance" has not occurred. The Government has therefore made out a *prima facie* case of liability under 42 U.S.C. § 9607(a)(1) against Richard and Dayna McCarty, and Terry, Sherry and Michael McCarty. *See United States v. Serafini*, 706 F.Supp. 346 (M.D.Pa.1988). The individual defendants argue, however, that the "innocent landowner" defense protects them from liability as current owners of the facility. The innocent landowner defense is an amalgam of 42 U.S.C. § 9607(b)(3) and 42 U.S.C. §§ 9601(35)(A) and (B). Under 42 U.S.C. § 9607(b)(3), the defendants have the burden of proving by a preponderance of the evidence, each of the following four propositions to be entitled to the innocent landowner defense:

1. The release or threat of release of a hazardous substance and the resulting damages were caused solely by an act or omission of a third party;

2. The third party's act or omission did not occur in connection with a contractual relationship (either direct or indirect) with the defendants;

---

**1.** The Court granted the motion for partial summary judgment filed by Betty McCarty at the conclusion of the oral argument. This memorandum decision will constitute the Court's written findings supporting that decision.

3. The defendants exercised due care with ·respect to the hazardous substance; and

4. The defendants took precautions against the third party's foreseeable acts or omissions and the foreseeable consequences resulting therefrom.

These four requirements for the innocent landowner defense were contained in CERCLA when it was passed in 1980. Confusion arose, however, over whether a current owner's warranty deed or land sale contract with a prior owner might constitute a "contractual relationship" which would bar the current owner from using the innocent landowner defense. To clarify this area, Congress passed the Superfund Amendments and Reauthorization Act (SARA) in 1986 which defined the term "contractual relationship" contained in the second of four requirements listed above. That definition—contained in 42 U.S.C. § 9601(35)(A)—is as follows:

The term "contractual relationship" ... includes, but is not limited to, land contracts, deeds or other instruments transferring title or possession unless the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility and one or more of the circumstances described in clause (i), (ii), or (iii) is also established by the defendant by a preponderance of the evidence:

(i) At the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in or at the facility.

(ii) The defendant is a government entity which acquired the facility by escheat or through any other involuntary transfer....

(iii) The defendant acquired the facility by inheritance or bequest.

In addition to establishing the foregoing, the defendant must establish that he has satisfied the requirements of ... 42 U.S.C. §§ 9607(b)(3)(a) and (b).

Under this statute, Congress set down a strict rule that any instrument transferring title or possession of the facility would be a "contractual relationship" barring the use of the defense unless certain enumerated conditions were met. For the purposes of this case, the individual defendants could get around the contractual relationship bar if they proved by a preponderance of the evidence that at the time they acquired the facility they did not know and had no reason to know that PCBs were disposed of on, in, or at the gravel pit. This lack of knowledge is further defined in 42 U.S.C. § 9601(35)(B) as follows:

To establish that the defendant had no reason to know, as provided in clause (i) of subparagraph (A) of this paragraph, the defendant must have undertaken, at the time of acquisition, all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. For purposes of the preceding sentence the court shall take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presence of contamination of the property, and the ability to detect such contamination by appropriate inspection.

The Court has now reviewed all the statutory provisions establishing the innocent landowner defense. The four basic requirements of the defense were quoted earlier. The second of those four requirements is that the third party's act or omission did not occur in connection with a contractual relationship (either direct or indirect) with the individual defendants. The individual defendants in the present case received their interest in the property through a stock transfer and quitclaim deed. It is not disputed by any of the parties that the defendants will be barred from asserting the innocent landowner defense because of this "contractual relation-

ship" unless the defendants can show the existence of the other three of the four earlier-listed requirements, and in addition show:

    1. That at the time they obtained the property they did not know and had no reason to know that there were PCBs disposed of on, in or at the gravel pit; and

    2. That they made all appropriate inquiry into the previous ownership and uses of the property.

With these requirements in mind, the Court will now examine whether the moving defendants have met their burdens of proof.

Turning first to Terry, Sherry and Michael McCarty, it is clear that the PCB release was caused "solely by an act or omission of a third party," and not by these three defendants. The Court also finds that these defendants had no reason to suspect that PCBs were on the property. As established by the affidavits of these three defendants discussed earlier, the defendants had no knowledge of any PCB release on the property until the EPA moved onto the site. When the defendants were teenagers, they did some sporadic labor at the site, but did almost nothing beyond working in a retail outlet and participating in construction of a log cabin in 1976. Their involvement came not as a result of any commercial transaction, but rather because their father gave them a gift of one share of McCarty's, Inc., stock. At the time of this gift, the three defendants were in their early–20's and had no connection with the operation of the site. While it is true that the shares of stock were redeemed by the three defendants for a percentage ownership in the property, that transaction does not change the nature of their innocent involvement. The redemption was precipitated by the corporation as part of its dissolution. Terry, Sherry and Michael McCarty were simply along for the ride because of a gift made earlier by their father.

The legislative history behind the SARA amendments shows that commercial transactions are to be treated differently than private transactions and inheritances. *See* 1986 U.S.Code Cong. & Admin.News pp. 2835, 3279–3280. In fact, that legislative history establishes a three-tier system: Commercial transactions are held to the strictest standard; private transactions are given a little more leniency; and inheritances and bequests are treated the most leniently of these three situations. *Id.* at p. 3280. The present case is actually more like an inheritance than a private transaction. Certainly these three defendants did not obtain their interest in an arms-length private sales transaction—they obtained their initial interest by familial gift and their ultimate interest by a corporate event beyond their control. All of this occurred when they were barely out of their teenage years. This is precisely the situation designed to be covered by the innocent landowner defense.

It is also important under 42 U.S.C. § 9601(35)(B) to examine the "obviousness or the presence or likely presence of contamination of the property." This case is certainly unlike *Wickland Oil Terminals v. Asarco, Inc.,* Civil No. 83–5906SC, 1988 WL 167247 (N.D.Cal.1988) where the court found the innocent landowner defense inapplicable because of the obvious presence on the property of slag piles containing lead and other heavy metals. *See* Discussion in 2 COOKE, *The Law of Hazardous Waste* § 14.01[8][b] at p. 14–150 (1988). While there is evidence in the present case that some of the defendants had holes eaten in their clothes by battery acid, this case was brought over PCBs, not battery acid, and there is no evidence that the PCBs were obvious.

Title 42 U.S.C. § 9601(35)(B) also directs this Court to examine whether the defendants had any "specialized knowledge or experience." As previously discussed, the three McCarty children had no specialized knowledge or experience concerning PCBs or any hazardous wastes.

■ The Government argues, however, that "no inquiry" can never constitute "all appropriate inquiry" under 42 U.S.C. § 9601(35)(A). The Government argues that Congress intended everyone, under

any conceivable circumstance, to make some inquiry about the existence of hazardous wastes when obtaining an interest in real property. But at least one court has rejected this argument by the Government. *See United States v. Serafini, supra.* It would have been easy to draft into the statute the very requirements sought by the Government: Congress could have simply said that some inquiry must be made in every case. But Congress did not do so. Instead, Congress used terms like "appropriate" and "reasonable" in describing the necessary inquiry. The choice of such terms indicates to this Court that Congress was not laying down the bright line rule asserted by the Government. Rather, Congress recognized that each case would be different and must be analyzed on its facts. Under the facts of the present case, the conduct of defendants Terry, Sherry and Michael McCarty was reasonable under all the circumstances. The Court therefore finds that these three defendants cannot be liable under 42 U.S.C. § 9607(a)(1), the "current owner or operator" prong of the Government's complaint.

▇ The Court turns next to defendant Dayna McCarty and finds her level of involvement similar to that of the three McCarty children. Dayna McCarty initially received her shares through an inheritance from her late husband. Her affidavit, quoted from earlier, shows that she had no knowledge of PCBs on the property until the EPA clean-up efforts. While she did become a secretary of the corporation, this occurred at a time when the corporation had basically ceased doing business and was in the process of dissolution. She was never involved in the operation of the site and had no knowledge about the presence of capacitors. She had no specialized knowledge or experience that would put her on notice. Under these circumstances, the Court finds that Dayna McCarty has proven the elements of the "innocent landowner" defense by a preponderance of the evidence and shall not be liable under 42 U.S.C. § 9607(a)(1), the "current owner or operator" prong of the Government's complaint.

▇ The Court turns next to defendant Richard McCarty. His affidavit, quoted earlier, shows that he had no hand in the operation of the site. Although he had an ownership interest in the site for a longer period than Dayna or the McCarty children, he was absent most of that time either at school, working in a nursing home, or working for the Forest Service. He had no knowledge of PCBs or capacitors on the site. While he was made a director and officer of McCarty's, Inc., in 1979, his elevation to these offices was done solely to facilitate the Pacific Hide deal. For all these reasons, the Court finds that Richard McCarty has proven the elements of the "innocent landowner" defense by a preponderance of the evidence and thus is not liable under 42 U.S.C. § 9607(a)(1), the "current owner or operator" prong of the Government's complaint.

In summary, the Court will therefore grant the motions for partial summary judgment to the extent that those motions seek a judgment that the following defendants are not liable under 42 U.S.C. § 9607(a)(1), the "current owner or operator" prong of the Government's complaint: William and Betty McCarty; Richard McCarty; Dayna McCarty; and Terry, Sherry and Michael McCarty.

▇ The Government's complaint also contains allegations that the individual defendants are liable under 42 U.S.C. § 9607(a)(2) as owners or operators of the facility at the time hazardous substances were disposed of. *See* Government's Second Amended Complaint filed June 19, 1988, at para. 55, p. 16. The "innocent landowner" defense is not applicable to this charge because as stated in 42 U.S.C. § 9601(35)(A), "instruments transferring title or possession" constitute a contractual relationship (which is a bar to the defense) "unless the real property ... was acquired by the defendant after the disposal or placement of the hazardous substance." If the Government proves, as it alleges in its complaint, that the defendants were owners or operators at the time of the disposal of PCBs, the innocent landowner defense would not apply because it is only applica-

ble where ownership occurred after the disposal. This Court does not have the briefing or record before it to determine when the "disposal" of PCBs took place. *See* 42 U.S.C. § 6903(3) and 42 U.S.C. § 9601(29). The Court will therefore deny the motions for partial summary judgment to the extent they seek a judgment on defendants' liability under 42 U.S.C. § 9607(a)(2) as owners or operators of the facility at the time of the disposal of PCBs.

The defendants also seek a ruling that their liability be limited to the liability they might incur as statutory trustees of McCarty's, Inc. This matter has not been briefed to the Court's satisfaction. If counsel desire to re-raise this issue in light of the rulings made in this opinion, they may do so but the Court cannot grant any motion for partial summary judgment on this issue under the present record.

Defendants William and Betty McCarty have filed their own motion to dismiss the entire CERCLA count. In that motion, they attempt to rely on defenses outside those defenses specifically enumerated in CERCLA, at 42 U.S.C. § 9607(b). There appears to be some question whether § 9607(b) is an exclusive and exhaustive list of the defenses available in a CERCLA action. *See* 2 COOKE, *The Law of Hazardous Waste, supra* at § 14.01[8][a], pp. 14–142 to 14–143. In this pro se motion, the Court has not received adequate briefing on what might be a complicated issue. The defendants William and Betty McCarty have been fully represented by counsel since the filing of their pro se motion. The Court will therefore await more detailed briefing on this issue before embarking on a discussion of whether defenses to CERCLA exist outside of 42 U.S.C. § 9607(b).

### JUDGMENT

The Court has examined the entire record concerning the cross-motions for partial summary judgment filed by the plaintiff and the following defendants: William and Betty McCarty; Richard McCarty; Dayna McCarty; and Terry, Sherry and Michael McCarty. In addition the Court has examined the entire record concerning the motion to dismiss filed by William and Betty McCarty. In accordance with the views expressed in the memorandum decision accompanying this judgment,

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the motion for partial summary judgment filed by the plaintiff be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the motions for partial summary judgment filed by the moving defendants listed above be, and the same are hereby, GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants William and Betty McCarty; Richard McCarty; Dayna McCarty; and Terry, Sherry and Michael McCarty shall not be liable under the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. § 9607(a)(1), as current owners or operators of a facility.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the above-listed defendants' motion for partial summary judgment seeking dismissal of the Government's claim under 42 U.S.C. § 9607(a)(2) be, and the same is hereby, DENIED. This claim asserts that the defendants were owners or operators of the facility at the time the hazardous wastes were disposed of.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants' motion for partial summary judgment seeking a ruling that their liability be limited to that as statutory trustees of McCarty's, Inc., be, and the same is hereby, DENIED, at this time without prejudice to the rights of the defendants to re-raise this issue upon full briefing in a subsequent motion.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the motion to dismiss filed pro se by defendants William and Betty McCarty be, and the same is hereby, DENIED, without prejudice to the

right of the defendants to re-raise this motion upon full briefing.