**K.C.1986 LIMITED PARTNERSHIP,**
Plaintiff,

v.

**READE MANUFACTURING,**
et al., Defendants,

v.

Habco, Inc., et al., Third–
Party Defendants.

No. 93–1062–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

Sept. 16, 1998.

Charles F. Speer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for K.C. 1986 Limited Partnership.

Carl H. Helmstetter, Elaine D. Koch, Spencer Fane Britt & Browne, LLP, Kansas City, MO, John Bradley Leitch, Sonnenschein, Nath & Rosenthal, Kansas City, MO, Barry S. Sandals, Morrison & Foerster, San Franciso, CA, for Reade Manufacturing.

Richard J. Pautler, Thompson Coburn, St. Louis, MO, Ian P. Cooper, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, MO, Michele B. Corash, Gloria Jang, Sean J. Mahoney, Morrison & Foerster, San Francisco, CA, Joseph R. Colantuono, Wehrman & Colantuono, L.L.C., Leawood, KS, Barry S. Sandals, Morrison & Foerster, San Francisco, CA, for U.S. Borax, Inc.

Carl H. Helmstetter, Elaine D. Koch, Spencer Fane Britt & Browne, LLP, Kansas City, MO, for Remacor.

David E. Shay, Joel P. Brous, Shughart, Thomson & Kilroy, P.C., Kansas City, MO, for Nancy Reade Forster.

Joe B. Whisler, Susan Elizabeth McKeon, Cooling & Herbers, P.C., Kansas City, MO, Edward L. Smith, Theresa Shean Hall, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, Charles Rogers, Thomas Larson, Torbjorn Svensson, Minneapolis, MN, Donald G. Scott, Edward R. Spalty, Charles F. Speer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, Joanne M. Barbera, Cooling & Herbers, Kansas City, MO, for Habco, Inc.

Edward L. Smith, Theresa Shean Hall, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, Charles Rogers, Thomas Larson, Torbjorn Svensson, Minneapolis, MN, Donald G. Scott, Edward R. Spalty, Charles F. Speer, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for Donald E Horne.

## ORDER

LAUGHREY, District Judge.

Pending before the Court is Terracon Environmental, Inc.'s ("Terracon") Motion for Summary Judgment on U.S. Borax's ("Borax") claims asserted against it under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the Resource Conservation and Recovery Act ("RCRA") and common law indemnity and for K.C.1986 Limited Partnership's ("K.C.1986") nuisance and common law indemnity claims. Also pending is Borax's Cross–Motion for Summary Judgment on its CERCLA claim against Terracon. Although this case is currently stayed pending approval by the United States Environmental Protection Agency ("EPA") of a remedial plan to clean up the site at issue, the Court is resolving certain pending motions at the request of the parties in an effort to expedite resolution of the dispute.

### I. Background

K.C.1986 has owned property located at 2251 Armour Road in North Kansas City, Missouri (the "Site") since December 1986. From 1963 to 1968, Borax leased the Site from a previous owner, Reade Manufacturing ("Reade"). Both Borax and Reade used the Site to store and blend chemicals used in herbicides. The Site was also used by Habco, Inc. ("Habco") and its predecessors to manufacture herbicides. In 1988, Hardee's Food Systems, Inc. ("Hardee's") began investigating the possibility of purchasing the Site from K.C.1986 for use as a restaurant. In 1988–1989, it was common in Kansas City for potential purchasers or lessees of commercial real estate to undertake some type of pre-acquisition environmental investigation. The scope and extent of work performed in these investigations varied considerably. Hardee's contacted and eventually retained Terracon to conduct a pre-acquisition environmental investigation.

Before the parties agreed to the scope and cost of the work to be done by Terracon, Terracon submitted several written proposals to Hardee's, the first of which is dated October 7, 1988. Terracon's initial proposal contemplated (1) a records review of state and federal environmental regulatory agencies to detect any history of environmental problems at the Site, (2) a title search to identify previous owners and historical land usage, (3) visual observation for signs of contamination, (4) tank, vat and floor sampling, (5) drilling and sampling, (6) well construction, (7) chemical analysis, (8) data evaluation, and (9) a final report. In the October 7, 1988, letter from Terracon to Hardee's outlining Terracon's initial proposal, Terracon noted that "[t]his property has a history of commercial development involving companies which regularly handled chemical commodities." In an undated letter by Hardee's concerning the scope of Terracon's investigation, Hardee's wrote, "As previously discussed, we are not prepared to spend this much money given the fact that a preliminary on site inspection revealed high evidence of contamination. We are, however, going to have Terracon analyze a grab sample to substantiate their suspicions." In a revised proposal for environmental investigation set forth in a letter dated December 21, 1988 from Terracon to Hardee's, Terracon stated, "the work scope has been developed to sample for contamination in an area where it may likely be present, based upon Terracon's knowledge of the site."

On April 5, 1989, Hardee's made a Freedom of Information Act ("FOIA") request to the EPA requesting information "pertaining to chemical, asbestos, petroleum, or other contamination you have investigated or know of at the [Site]." On June 15, 1989, Hardee's and K.C.1986 entered into a "Ground Lease" for the Site. The Ground Lease provides in part:

4.1 Hardee's agreement to lease the Premises is subject to all of the following conditions precedent being satisfied on or before the One Hundred Eightieth (180th) day after the last execution hereof . . .

\* \* \* \* \* \*

(C) Hardee's obtaining, at its sole cost, satisfactory soil tests and determining that the soil or ground is free from contamination and is otherwise suitable for constructing the improvements contemplated by Hardee's herein.

On September 5, 1989, Terracon issued its preliminary environmental assessment of the

Site, stating that "... [e]levated levels of several contaminants have been detected in the soil and groundwater samples collected at the site, which we feel will require further exploratory efforts and, most likely, remedial actions...." Hardee's forwarded the preliminary environmental assessment to K.C.1986 under cover of letter dated September 8, 1989. Terracon issued its final report outlining its environmental assessment of the Site on September 22, 1989. That same day, Hardee's notified K.C.1986 by certified mail of its election to terminate the Ground Lease as a result of the contamination uncovered incident to Terracon's investigation. A copy of Terracon's final report was then provided to K.C.1986 on October 9, 1989. The report advised K.C.1986 that the owner of the Site was required to notify the Missouri Department of Natural Resources ("Mo DNR") of Terracon's finding of contamination, and that if it failed to do so, Terracon would be required to report its findings to the Mo DNR.

In connection with its investigation, Terracon was present on the Site during all or part of approximately seven to 10 days between October 1988 and September 1989. As part of its investigation, Terracon installed monitoring wells at the Site in 1989. There is a dispute as to whether those monitoring wells contributed to the contamination of the regional alluvial aquifer beneath the Site. Contaminants, such as arsenic which was found in levels at the Site requiring remedial action, naturally migrate downward through soil. The rate of migration is affected by the amount of precipitation and the porosity and permeability of the soil. In contrast to natural migration of substances through soil, Borax asserts that because Terracon screened monitoring wells 1, 2 and 5 through the near-surface groundwater zone, high concentrations of arsenic were released directly to the top of the regional aquifer, and the arsenic loading to the regional aquifer beneath the Site was increased by 17 percent. Borax also argues that the conduits created by Terracon's monitoring wells have allowed concentrations of arsenic and other contaminants to migrate from the more highly contaminated clay into the less contaminated underlying sand aquifer. According to Terracon, its monitoring wells "did not cause a substantial increase in arsenic contamina-

tion" at the Site. Terracon asserts that its wells "were constructed in accordance with the standard of care in the community in the Greater Kansas City area that existed in 1989" and that they are "similar in design to monitoring wells installed and paid for by Borax and K.C.1986." Terracon's final report on September 22, 1989, recommended "that the five monitor wells be properly abandoned at the site, including removing the PVC casing and filling the boreholes with appropriate material." After the Ground Lease was terminated, Hardee's sent K.C. 1986 a letter dated November 21, 1989, in which it offered to cap or in some form remove the monitoring wells installed on the property by Terracon. According to Hardee's, K.C.1986 did not respond.

Terracon again informed K.C.1986 that it considered itself under an obligation to inform the Mo DNR of the contamination at the Site if K.C.1986 did not do so. K.C.1986 did not respond. Accordingly, by letter dated December 20, 1989, Terracon notified the Mo DNR of its findings of contamination at the Site. In September 1993, the Mo DNR and K.C.1986 entered a Consent Agreement requiring K.C.1986 to prepare and implement a remedial action plan for the Site. K.C.1986 did not abandon the monitoring wells installed by Terracon until September 1995.

On March 20, 1995, K.C.1986 sent Borax a Resource Conservation and Recovery Act ("RCRA") claim notice. On August 16, 1995, Borax sent Terracon an RCRA claim notice. The RCRA notice was not sent to Terracon, however, until after Borax had already filed its original RCRA claim against Terracon, which it did on August 4, 1995.

## II. Summary Judgment Standard

The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure provides that a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Reliance Ins. Co. v. Shenandoah South, Inc.,* 81 F.3d 789, 791 (8th Cir.1996). The moving party carries the initial burden of informing the district court of the basis for the motion and identifying the portions of the record which demonstrate a lack of a genuine issue for trial. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When the moving party has carried its burden under Rule 56(c), [the] opponent [of the Motion] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party is required to designate specific facts from which a reasonable juror could return a verdict in its favor. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party, and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.,* 950 F.2d 566, 569 (8th Cir.1991) (*citation omitted*).

### III. *CERCLA Liability*

Before liability under CERCLA can be established, "a plaintiff must show that a defendant is within one of the four classes of covered persons enumerated in [42 U.S.C. § 9607(a) ]." *Control Data Corp. v. S.C.S.C. Corp.,* 53 F.3d 930, 934 (8th Cir.1995). Borax contends that Terracon falls within the second class of covered persons enumerated in 42 U.S.C. § 9607(a)(2): "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." In response, Terracon argues that it is not a "covered person" because it has never operated the Site and, if the Court finds that Terracon has operated the Site, no hazardous substance was disposed of during its operation of the Site. In addition, Terracon argues that environmental consultants who do preacquisition environmental testing for prospective purchasers are exempt from

CERCLA liability. The Court will first address the issue of exemption.

### A. Is there a CERCLA exemption for preacquisition soil and ground water investigation?

Terracon claims that Congress intended to exempt environmental engineers from CERCLA liability when they conduct preacquisition soil and ground water investigations. Terracon has cited no case which finds an absolute exemption nor has it pointed to any specific language in CERCLA which creates such an exemption. Instead it argues that because Congress created the innocent landowner defense in CERCLA that Congress must also have intended to create a defense for environmental engineers conducting preacquisition environmental testing.

The innocent landowner defense provides that an owner or operator can be absolved of liability if the owner or operator is "innocent." To qualify as an innocent owner, the defendant must have acquired the contaminated real property "after the disposal or placement of the hazardous substance on, in, or at the facility" and "[a]t the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility." 42 U.S.C. § 9601(35)(A). This defense, however, does not apply if the release of hazardous waste was caused by "an employee or agent of the defendant." 42 U.S.C. § 9607(b)(3).

Terracon acknowledges that it is not entitled to the innocent landowner defense but reasons that the innocent landowner defense shows that Congress wanted prospective real estate purchasers to conduct preacquisition environmental inquiries. Because environmental engineers are needed to conduct such inquiries, Terracon concludes that they should be exempt from CERCLA liability.

 In light of CERCLA's language, its purpose and the judicial precedent interpreting it, the Court finds no basis for implying an absolute exemption from CERCLA liability for environmental engineers who conduct preacquisition environmental inquiries. Ter-

racon is, therefore, not entitled to summary judgment based on such an exemption.[1]

## B. Disposal

Terracon also claims that it is not a covered person under 42 U.S.C. § 9607(a)(2) because no hazardous waste was "disposed" of while Terracon conducted its soil testing. The issues regarding disposal presented by the cross motions for summary judgment include (1) whether preacquisition soil testing constitutes disposal and (2) if it is disposal, should a strict liability or negligence standard be used to determine Terracon's liability under CERCLA.

### 1. Does Preacquisition Soil and Water Testing Constitute Disposal?

For CERCLA liability to attach to Terracon, it must have "disposed" of hazardous waste. CERCLA incorporates the definition of "disposal" contained in the RCRA, which provides:

> The term "disposal" means the discharge, deposit, injection, dumping, spillage, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any water, including ground waters.

42 U.S.C. § 6903(3). Whether disposal of hazardous waste occurred during Terracon's soil investigation is disputed by the parties. Borax and K.C.1986 argue that Terracon disposed of hazardous waste when it constructed monitoring wells as part of its pre-acquisition investigation. According to Borax and K.C.1986, the wells increased the natural rate of contaminant migration, causing groundwater contamination and increasing the pre-existing soil contamination. Although Terracon devotes significant discussion to whether "passive migration" constitutes "disposal" under CERCLA, Borax asserts, and the Court agrees, that passive migration is not at issue under the facts of this case. Passive migration refers to the

natural process whereby elements, including contaminants, move and spread over time as a result of a variety of forces unaided by human action, including, *inter alia,* shifts in the earth, rain, and groundwater erosion. *See CDMG,* 96 F.3d at 713. It is uncontested that Terracon bored holes in the land as part of its soil investigation. It is this action which Borax asserts caused hazardous waste to shift and spread, thereby constituting disposal.

The definition of disposal does not quantify the amount of hazardous substance involved in the act. *See CDMG,* 96 F.3d at 719 ("There is no exception for de minimus disturbances. [citations omitted] The fact that a Defendant's disposal of contaminants is trivial may provide a ground to allocate less liability to that Defendant, but it is not a defense to liability"); *see also Stewman,* 993 F.2d at 649 ("there is no minimum quantitative requirement to establish a release or threat of release of a hazardous substance under CERCLA") (citing *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 668–69 (5th Cir. 1989)). Neither is it material for purposes of CERCLA liability that the act complained of is the only or the initial introduction of hazardous material to the Site. *See Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.,* 976 F.2d 1338, 1342–43 (9th Cir.1992) ("CERCLA's definition of 'disposal' expressly encompasses the 'placing of any ... hazardous waste ... on any land.' 42 U.S.C. § 6903(3). Congress did not limit the term to the initial introduction of hazardous material onto property"); *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1573 (5th Cir.1988) ("[T]his definition of disposal does not limit disposal to a one-time occurrence—there may be other disposals when hazardous substances are moved, dispersed, or released during landfill excavations and fillings"); *Acme Printing Co.,* 870 F.Supp. at 1480 (Defendant liable for release of hazardous substance where exca-

---

1. A full discussion of why the innocent landowner defense does not support Terracon's argument that environmental engineers are entitled to special status in CERCLA litigation, is found in IIIB.2, Standard of Care Applicable to Preacquisition Soil Testing, *infra.* If the innocent landowner defense is insufficient to justify relaxing the standard of liability for environmental consultants, it necessarily follows that it does not justify an absolute exemption from CERCLA liability.

vation of site caused barrels of waste to be unearthed and ruptured).

■ Whether Terracon's construction of monitoring wells increased the rate of contaminant migration is a question of fact which will require credibility determinations of the parties' expert witnesses at trial. The Court finds that based on the evidence before it, a genuine issue of material fact exists as to whether Terracon caused a disposal of hazardous substances when it conducted its environmental investigation. Accordingly, summary judgment on this point must be denied.

## 2. Standard of Care Applicable to Pre-acquisition Soil Testing—Strict Liability or Negligence.

■ Generally, owners and operators[2] are strictly liable for clean up costs in a CERCLA case. *See U.S. v. Northwestern Pharm. & Chem. Co., Inc.,* 810 F.2d 726, 732 n. 3 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. Monsanto Co.,* 858 F.2d 160, 167 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Terracon, however, advances two reasons why a negligence standard rather than a strict liability standard should apply to its disposal activities at the Site. First, Terracon claims that its investigation at the site was done in accordance with the National Contingency Plan and it, therefore, cannot be liable in the absence of negligence. Second, Terracon claims that the innocent landowner defense requires the court to apply the negligence standard to any environmental engineer who conducts a preacquisition environmental investigation.

### a. National Contingency Plan

In its reply brief, Terracon argued for the first time that it should be absolved from CERCLA liability absent a finding of negligence because its acts were done in accordance with the National Contingency Plan ("NCP").

[N]o person shall be liable under this subchapter for costs or damages as a result of actions taken or omitted in the course of rendering care, assistance, or advice in accordance with the National Contingency Plan ("NCP") or at the direction of an on scene coordinator appointed under such plan, with respect to an incident creating a danger to public health or welfare or the environment as a result of any releases of a hazardous substance or the threat thereof. This paragraph shall not preclude liability for costs of damages as the result of negligence on the part of such persons. 42 U.S.C. § 9607(d)(1). Terracon argues that its investigation of the Site constitutes "care, assistance, or advice rendered in accordance with the NCP." Borax argues that Terracon's investigation is not "in accordance with the NCP" because the NCP is directed toward remedial and response activities, not pre-purchase investigation and because Terracon did not comply with all "applicable or relevant and appropriate requirements" ("ARARs"). *See, e.g.,* 40 C.F.R. § 300.400(g); 40 C.F.R. § 300.700(c)(5)(iii)(g). Specifically, Borax argues that Terracon did not comply with Missouri's private well construction standards, including 10 CSR 23–1.020(C)(8), which states that "[o]bservation wells ... shall be constructed by such methods and of such materials that they are not a source or channel of pollution or contamination to any groundwater supply or aquifer."

■ In *Stewman v. Mid–South Wood Prods. of Mena, Inc.,* 1992 WL 489729 (W.D.Ark.1992) *aff'd,* 993 F.2d 646 (8th Cir. 1993), the court found that the plaintiffs failed to meet their burden to establish that attorney fees and investigative costs were consistent with the NCP. *Stewman,* 1992 WL 489729 at *9. Similarly, Terracon has failed to meet its burden to establish that its pre-acquisition investigation was done "in the course of rendering care, assistance, or advice in accordance with the [NCP]". Terracon has offered no proof to establish the same. Because a genuine issue of material fact exists as to whether its actions were consistent with the NCP, the court cannot find as a matter of law that Terracon is entitled to a negligence standard of liability based on its actions being "rendered in accordance with the NCP."

**2.** The Court will address Terracon's status as an operator *infra.*

## b. Does the Innocent Landowner Defense Justify a Negligence Standard for Preacquisition Soil Testing?

Terracon claims that a soil and groundwater investigation cannot constitute disposal within the meaning of CERCLA unless there is proof that the investigation was negligently performed. Borax contends that the strict liability standard that is generally applicable to CERCLA claims is also applicable to soil and ground water testing.

In support of its argument, Terracon relies primarily on the case of *United States v. CDMG Realty Co.*, 96 F.3d 706 (3rd Cir. 1996), in which the Third Circuit applied the negligence standard to a soil investigation being done by a landowner to assess the development potential of its land. The Third Circuit's reasoning is based on the innocent landowner's defense. 42 U.S.C. § 9607(b)(3) and the statutory methods to qualify for the innocent landowner's defense. 42 U.S.C. § 9601(35)(B). "The innocent landowners defense requires, inter alia, that '[a]t the time the defendant acquired the facility, the defendant did not know and had no reason to know that any hazardous substances which is the subject of the release or threatened release was disposed of on, in or at the facility.'" 96 F.3d 706, 721 citing 42 U.S.C. § 9601(35)(A)(i). To show that it had no reason to know of the hazardous waste, a defendant

> must have undertaken, at the time of acquisition, all appropriate inquiry in to the previous ownership and uses of the property consistent with good commercial or customary practice in an effort to minimize liability. For purposes of the preceding sentence the court shall take into account any specialized knowledge or experience on the part of the defendant, the relationship of the purchase price to the value of the property if uncontaminated, commonly known or reasonably ascertainable information about the property, the obviousness of the presence or likely presence of contamination at the property, and *the ability to detect such contamination by appropriate inspection.*

42 U.S.C. § 9601(35)(B) (emphasis added).

Because CERCLA refers to an "appropriate inspection," the Third Circuit concluded that Congress contemplated that soil testing would be done and could not have intended such an inspection to trigger strict liability.

Otherwise, prospective purchasers who by diligently inspecting for contamination cause the dispersal of any contaminants will find themselves liable for causing a 'disposal.' And the innocent owner defense would offer such prospective purchasers no protection: if they buy the property after discovering contamination, they will be ineligible for the defense because they will not be 'innocent' (i.e., they will 'know and ha[ve] reason to know' of a prior disposal, id. § 9601(35)); if they do not buy the property, they will be ineligible for the defense because they will not be 'owners' (i.e., they will not have 'acquired the facility' as required by 42 U.S.C. § 9601(35)(A)). In order to give the defense effect, then, an 'appropriate' soil investigation cannot constitute disposal.

The Court declines to adopt this reasoning of the Third Circuit in CDMG because it is not supported by and is, in fact, contrary to the express language in CERCLA. Nor will the innocent landowner defense be eviscerated by the application of a strict liability standard in this case.

When Congress wished to relax the strict liability standard of CERCLA, it expressly did so. CERCLA has a specific section for persons providing care and advice during cleanup and no reference is made to environmental testing. 42 U.S.C. § 9607(d). Nor were environmental investigators given any protection in 42 U.S.C. § 9619 which limits the liability of response action contractors who are working for the government or are working for a private responsible party under the supervision of the government. Nor did Congress create a special defense for environmental testers. Finally, in 42 U.S.C. § 9607(a), Congress provided that: "Notwithstanding any other provision or rules of law and subject only to the defenses set forth in the statute," operators who dispose of hazardous waste shall be strictly liable for the cleanup. The express language of CERCLA demonstrates that there is no special standard of liability for preacquisition testing of contaminated land.

The Third Circuit's interpretation of 42 U.S.C. § 9601(35)(A)(i) also contorts the language by including negligent testing in the definition of "disposal" but excluding non negligent testing. Such a bifurcated definition is unsupported in the text. The Third Circuit suggests that the reference to "appropriate inspection" was intended to convey this distinction but a more contextual explanation for the term is that the innocent landowner defense would not apply unless the inspection was seriously undertaken given the unique circumstances of the site. The whole paragraph involves a discussion of what a landowner must do to be labeled "innocent." It does not deal with the standard of care the landowner must exercise when investigating the site.

■ Finally, the innocent landowner defense will not be eviscerated by the application of the strict liability standard to environmental investigators, because soil tests are not required in all cases. Determining whether appropriate inquiry has taken place under 42 U.S.C. § 9601(35) requires the Court to balance various enumerated factors, none of which Congress indicated is dispositive of the outcome. *See* 42 U.S.C. § 9601(35)(B). The purchaser's first obligation to maintain the status of an innocent owner is to inquire into the history of ownership and uses of the land. *See e.g., Acme Printing Ink Co. v. Menard, Inc.,* 870 F.Supp. 1465, 1480–81 (E.D.Wis.1994) ("The simple fact that the site was used as a dump by Fadrowski should have put Menard on notice that hazardous substances might be present there"). If the history reveals no owner or uses to which the land was put that would alert a reasonable person in the prospective purchaser's position of the possibility of hazardous waste contamination, an appropriate inquiry has been made, and the purchaser likely will be deemed an innocent owner. If, on the other hand, the inquiry reveals information regarding the land's prior owners or uses which would put a reasonable person in the prospective purchaser's position on notice of the possibility of hazardous waste contamination, further inquiry to eliminate the possibility that the property is contaminated is probably required. If the further inquiry reveals no contamination, the prospective purchaser may acquire the property without sacrificing the status of an innocent owner. If further inquiry reveals the need for actual soil testing to determine if contamination is present, the prospective owner may: (1) conduct the soil investigation and assume the risk associated therewith if his actions further contaminate the property, (2) conduct the soil investigation in such a way that it does not further contaminate the property, or (3) choose not to purchase the property. The innocent landowner defense would also be available in that rare case where appropriate preacquisition soil testing fails to reveal contamination which is actually present.

■ It is clear, therefore, that the innocent landowner defense will have continuing vitality except in those circumstances where an owner has learned of actual contamination. Nor will there be any liability for soil testing unless the landowner's contractor causes a "disposal" of hazardous waste while doing the testing. Both results are consistent with the innocent landowner defense. *See* 42 U.S.C. § 9601(35)(A)(i) (Defendant cannot know that hazardous waste was disposed at the site); 42 U.S.C. § 9601(35)(D) ("Nothing in this innocent landowner defense shall affect the liability under this chapter of a defendant who, by any act or omission, caused or contributed to the release or threatened release of a hazardous substance which is the subject of the action relating to the facility.") Disposing of hazardous wastes during an environmental investigation exposes the owner or operator conducting the investigation to the same liability as any other owner or operator who disposes of hazardous waste. Actual fault is not at issue, as "CERCLA is a remedial strict liability statute. As such, its focus is on responsibility, not culpability." *Mexico Feed & Seed,* 980 F.2d at 484.

Terracon argues, without providing pinpoint cites, that *United States v. A & N Cleaners and Launderers, Inc.,* 854 F.Supp. 229 (S.D.N.Y.1994), *United States v. Monsanto Co.,* 858 F.2d 160 (4th Cir.1988) and *United States v. Serafini,* 706 F.Supp. 346 (M.D.Pa.1988) stand for the proposition that it is inappropriate under CERCLA § 107(a) to hold Terracon strictly liable for the dispos-

al of hazardous substances during its pre-acquisition soil investigation. The Court disagrees with Terracon's characterization of these cases. In *A & N Cleaners,* the court found a landowner strictly liable under CERCLA for the possible disposal of hazardous substances by its tenants and subtenants. *A & N Cleaners,* 854 F.Supp. at 244. The court's opinion focused on whether the landowner could claim the innocent owner defense where it failed to inquire into its tenants' and subtenants' disposal practices. *A & N Cleaners,* 854 F.Supp. at 243. Addressing the issue of pre-acquisition investigation, the court criticized CERCLA's "ill-defined due care and investigatory requirements," but did not posit that CERCLA requires installation of monitoring wells, soil testing or any other type of investigation which would require disrupting the land. *A & N Cleaners,* 854 F.Supp. at 240. The *Monsanto* opinion discusses the need for pre-acquisition investigation and warns that CERCLA's innocent owner defense "does not sanction ... willful or negligent blindness on the part of absentee owners." *Monsanto,* 858 F.2d at 169. While *Monsanto* acknowledges that some form of pre-acquisition investigation is required, it does not posit that CERCLA requires installation of monitoring wells, soil testing or any other type of investigation which disrupts the land. *Monsanto,* 858 F.2d at 169. Finally, the *Serafini* court found that whether the defendant's failure to inspect the premises or to inquire into the past uses of the site constituted an inquiry inconsistent "with good commercial or customary practice" was a question of fact that could not be resolved on the record then before the court. *Serafini,* 706 F.Supp. at 353. *Serafini* does not stand for the proposition that intrusive pre-acquisition soil investigation is required under CERCLA.

### c. Operator

▌ The Eighth Circuit has held that an individual may not be held liable as an 'operator' under § 9607(a)(2) unless he or she (1) had authority to determine whether hazardous wastes would be disposed of and to determine the method of disposal and (2) actually exercised that authority, either by personally performing the tasks necessary to dispose of the hazardous wastes or by directing others to perform those tasks. *United States v. Gurley,* 43 F.3d 1188, 1193 (8th Cir.1994), *cert. denied,* 516 U.S. 817, 116 S.Ct. 73, 133 L.Ed.2d 33 (1995) (individual employee of waste reclamation company, who was not an officer, director or shareholder of the company, was found liable as an operator under CERCLA).[3] Whether Terracon was an operator of the Site requires an analysis of the totality of the circumstances surrounding its involvement at the Site. *Gurley,* 43 F.3d at 1195 ("An individual defendant's responsibility for the disposal of hazardous waste should be judged on a case-by-case bases"). Terracon argues that it should not be held to be an operator because its involvement at the Site was limited in nature. (Terr. Sugg. in Supp. at 16). Terracon focuses on the extent of its involvement with the Site, rather than the nature of that involvement. The proper inquiry is not the extent of the involvement with a hazardous waste site, but whether disposal occurred during that involvement and whether the person disposing of hazardous waste had authority to determine whether and how hazardous waste would be disposed of and exercised that authority during its involvement with the site. *See Gurley,* 43 F.3d at 1193; *CDMG,* 96 F.3d at 709. For instance, in *Lincoln Properties, Ltd. v. Higgins,* 823 F.Supp. 1528 (E.D.Cal.1992), the court found that the County was not liable under CERCLA for cleanup of hazardous substances which leaked from a sewer line on which the County performed maintenance. *Lincoln Properties,* 823 F.Supp. at 1534–35. The Court noted that the repairs were made at the request of the property owner rather than at the discretion of the County. *Lincoln Properties,* 823 F.Supp. at 1535. Further, there was no evidence that disposal occurred while the repairs were being made. In contrast, the Ninth Circuit imposed operator liability on a contractor where there was evidence that hazardous substances were dis-

---

**3.** In *United States v. TIC Investment Corp.,* 68 F.3d 1082 (8th Cir.1995), the Eighth Circuit indicated that a different test to determine operator liability than that articulated in *Gurley* may apply to various types of actions not applicable in this case. *TIC,* 68 F.3d at 1089, n. 5, *cert denied sub nom. Georgoulis v. United States* — U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

posed of during the excavation and grading phases of a construction project. *Kaiser Aluminum*, 976 F.2d at 1342 ("the activity which produced the contamination in the present case—the excavation and grading of the development site—occurred during, not after, the construction process.... [The defendant] had sufficient control over this phase of the development to be an 'operator' under section 9607(a)(2)"). In *Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F.Supp. 1284 (N.D.Iowa 1994), the court found a contractor not liable as an operator under CERCLA where the contractor "did not have any 'authority to control' the cause of contamination at the time the hazardous substances were released into the environment." *Interstate Power*, 909 F.Supp. at 1289. The court distinguished the facts relevant to the contractor in *Interstate Power* and those relevant to the contractor in *Kaiser* by noting that in cases where no operator liability was found, "all of [the defendant's] actions were taken at the direction of other parties." *Interstate Power*, 909 F.Supp. at 1289.

■ In the case at hand, Terracon was retained specifically to determine the environmental status of the Site. Terracon is an environmental consultant trained in detecting hazardous substances. Terracon used its expertise to prepare a proposed plan of action for investigating the Site and submitted its proposals to Hardee's for authorization. Terracon was given access to the Site and, once a plan was approved, orchestrated the method to carry out that plan. Although Hardee's approved the installation of monitoring wells, Terracon decided how and where to install them. It was this process that Borax and K.C.1986 allege caused disposal of hazardous waste which further contaminated the Site. Based on the record before the Court, there is insufficient evidence that Hardee's, or any other person or entity, controlled this process. Summary judgment declaring that Terracon is not an operator is, therefore, improper. While it appears that Terracon's actions were done at its own discretion, the evidence adduced on this issue is scant. Because Borax and K.C.1986 bear the burden of proof on this issue, summary judgment declaring Terracon liable as an operator is also inappropriate.

## IV. *RCRA Claim*

■ Borax's Amended Cross–Claim states a cause of action against Terracon under the RCRA. The primary purpose of the RCRA "is to reduce the generation of hazardous waste, to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.' 42 U.S.C. § 6902(b) (1988 ed.)" *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). Under the citizen suit provision of the RCRA, a private person may sue to enforce the regulations promulgated under the RCRA. 42 U.S.C. § 6972(a)(1)(B). Because the "RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards," the remedies available for a private citizen suit are limited to a mandatory injunction or a prohibitory injunction. *Meghrig*, 516 U.S. at 483–84, 116 S.Ct. 1251. To effectuate the purpose of the RCRA, Congress imposed a notice and delay provision as a jurisdictional prerequisite to commencing a private citizen suit:

> No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice to (i) the Administrator [of the EPA]; (ii) the State in which the alleged endangerment may occur; (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) ...

42 U.S.C. § 6972(b)(2)(A) (1983 & Supp. 1991); *Hallstrom v. Tillamook County*, 493 U.S. 20, 32–33, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989), *reh'g denied*, 493 U.S. 1037, 110 S.Ct. 761, 107 L.Ed.2d 777 (1990).

In *Hallstrom*, the plaintiff failed to notify the affected state of its intent to sue until after the RCRA suit had been filed. *Hallstrom*, 493 U.S. at 24, 110 S.Ct. 304. In response to defendant's motion for summary judgment based on improper notice under the RCRA, the district court noted that after the filing of the suit, the state agency was

given the statutory notice period to take action and had expressed no interest in doing so. *Hallstrom,* 493 U.S. at 24, 110 S.Ct. 304. The district court concluded that the plaintiff had cured its failure to give notice and that "dismissing the action at this stage would waste judicial resources." *Hallstrom,* 493 U.S. at 24, 110 S.Ct. 304 (citing Civ. No. 82–481 (Ore., Apr. 22, 1983)). The Ninth Circuit reversed the district court, holding that the "notice requirement deprived the District Court of subject matter jurisdiction." *Hallstrom,* 493 U.S. at 24, 110 S.Ct. 304. The Supreme Court affirmed the Ninth Circuit, noting that its decision upheld congressional goals in enacting the RCRA in two ways: "[f]irst, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits .... [s]econd, notice gives the alleged violator 'an opportunity to bring itself into complete compliance with the [RCRA] and thus likewise render unnecessary a citizen suit.'" *Hallstrom,* 493 U.S. at 29, 110 S.Ct. 304 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)). Accordingly, plaintiff's RCRA claim was dismissed after four years of litigation. *Hallstrom,* 493 U.S. at 25, 110 S.Ct. 304.

Borax argues that "[i]t is well settled that, for purposes of RCRA's notification provisions, only the pending complaint (here, Borax's April 28, 1997, Amended Cross–Claim against Terracon) is relevant." (Borax Opp. at 12 (citing *Zands v. Nelson,* 779 F.Supp. 1254 (S.D.Cal.1991); *Clorox Co. v. Chromium Corp.,* 158 F.R.D. 120 (N.D.Ill.1994); *Buggsi, Inc. v. Chevron U.S.A., Inc.,* 857 F.Supp. 1427 (D.Or.1994))). None of the cases cited by Borax, however, is factually analogous to the case at hand. Borax filed its RCRA claim against Terracon on August 7, 1995. On August 16, 1995, after filing its RCRA claim, it sent Terracon's counsel its RCRA notice of citizen suit. It later filed an Amended Cross–Claim reiterating its RCRA claim against Terracon on April 28, 1997. Borax argues that the court should consider its RCRA suit "commenced" as of the date of the currently operative pleading, April 28, 1997.

In *Zands,* the court held that the plaintiff's third amended complaint raised the only relevant causes of action for determining compliance with the RCRA notice provision. It went on to say:

> Notably, this case does not present the more difficult situation where a claim is in the initial complaint, notice is given, and then the same claim is in the amended complaint. The facts here are simpler: (a) the section 6972(a)(1)(B) claim was not added until the third amended complaint, and (b) the other 'notice and delay' claims that were in earlier complaints were left out of this final amended complaint.

*Zands,* 779 F.Supp. at 1258. Notably, the case at hand does present the more difficult situation outlined above. Similarly, in *Clorox,* "the RCRA claims were not alleged in the original complaint. Clorox filed the RCRA claim for the first time in its amended complaint, which occurred well after the ninety day delay period." *Clorox,* 158 F.R.D. at 126. In *Buggsi,* also relied on by Borax, the court does not address whether the RCRA claim was alleged in the initial complaint or added later. Citing *Zands* and providing minimal analysis, the *Buggsi* court held that "[b]ecause the second amended complaint containing the RCRA claim was filed more than ninety days after notice was given to [the defendant], jurisdiction in this court is proper." *Buggsi,* 857 F.Supp. at 1430.

■ The procedural history of Borax's RCRA claim presents an issue similar to that addressed in *Hallstrom.* As in Hallstrom, this court finds that failure to comply with the RCRA notice and delay requirement necessitates dismissal of plaintiff's RCRA claim. Just as the Supreme Court declined to allow the plaintiff in *Hallstrom* to remedy its notice deficiency after commencing its RCRA action, this court declines to allow Borax to remedy its notice deficiency after commencing its RCRA action. The fact that Borax filed an amended cross-claim reiterating its RCRA cause of action does not provide a sufficiently distinguishing factor to alter the analysis provided in *Hallstrom.* Applying the *Hallstrom* analysis, this Court never had subject matter jurisdiction over

Borax's RCRA claim and is not vested with it by virtue of Borax filing an amended cross-claim reiterating it previously asserted RCRA claim. Accordingly, summary judgment on Borax's RCRA claim is appropriate.

### V. *K.C.1986's Nuisance Claim*

K.C.1986 asserts a cause of action against Terracon for nuisance in Count V of its Second Amended Complaint. Paragraph 56 of the Second Amended Complaint asserts that Terracon created a nuisance which "has interfered, and continues to interfere, with Plaintiff's right to use and enjoy its property," an allegation which sounds in the nature of a private nuisance. In its Opposition to Terracon's motion seeking summary judgment on the nuisance claim, K.C.1986 specifically defines, and thereby limits, its claim to one for public nuisance rather than private nuisance. (Opp. at 3).

To maintain an action for public nuisance, K.C.1986 must establish that Terracon (1) unreasonably interfered, (2) with common community rights, such as health, safety, peace or convenience, and (3) suffered a special injury that differs in kind, and not just degree, from the injury to the general public. *44 Plaza, Inc. v. Gray–Pac Land Co.*, 845 S.W.2d 576, 580 (Mo.App.1992) (citing *City of Lee's Summit v. Browning*, 722 S.W.2d 114, 115 (Mo.App.1986); *Kelly v. Boys' Club of St. Louis, Inc.*, 588 S.W.2d 254, 256–57 (Mo.App. 1979)). K.C.1986 asserts that Terracon's investigation interfered with common community rights in that it contaminated the ground water at the Site. K.C.1986 further alleges that it suffers a different kind of injury as a result of the nuisance because "the Missouri Department of Natural Resources and the U.S. Environmental Protection Agency have targeted K.C.1986 in connection with their actions to remediate the site." (Opp. at 3).

K.C.1986 offers no evidentiary support to establish that the ground water contamination interferes with common community rights. While contaminated property may interfere with common community rights, *see, e.g. Northeastern Pharm. & Chem.*, 810 F.2d at 734 and *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2nd Cir. 1985), the burden of proof rests on K.C.1986 to proffer sufficient evidence from which a reasonable jury could find that the Site constitutes a public nuisance. There is no evidence before the Court that the ground water has contaminated drinking water or has otherwise unreasonably interfered with any right common to the public. *See, e.g., Interstate Power Co. v. Kansas City Power & Light Co.*, 909 F.Supp. 1241, 1251 (N.D.Iowa 1993) (summary judgment granted on plaintiff's public nuisance claim where plaintiff "has not shown that coal tar contamination at the Mason City site has unreasonably interfered with the public's use of Willow Creek, or any other right common to the public").

Further, K.C.1986 has failed to establish that it suffered from a special injury that differs in kind, not just in degree, from the rest of the community. Because K.C. 1986 has not shown community harm resulting from the contamination, it cannot show that it suffered harm of a different kind than the community. The fact that K.C.1986 is required to pay cleanup costs for the Site under CERCLA, and that Terracon may be responsible for part of the contamination necessitating those costs, does not satisfy the requirement that K.C.1986 suffer a different kind of harm than the community where it has not been shown that the community suffered harm as a result of Terracon's actions. It is undisputed that the Site was contaminated prior to Terracon's involvement. As the current owner of the Site, K.C.1986 would have been liable for its cleanup under CERCLA regardless of whether Terracon's actions increased the level of contamination at the Site. Accordingly, summary judgment in favor of Terracon on K.C.1986's public nuisance claim is appropriate.

### VI. *Indemnity*

Terracon seeks summary judgment on Count VII of Borax's Amended Cross–Claims and on Count VIII of K.C. 1986's Second Amended Complaint, both of which seek indemnification from Terracon for remediation costs incurred in cleaning up the Site. For Borax or K.C.1986 to be entitled to indemnification, each must establish that it is not directly at fault for the contamination necessitating the cleanup. *See Purk v. Purk*, 817 S.W.2d 915, 917 (Mo.App.1991) (citing

Campbell v. Preston, 379 S.W.2d 557, 560 (Mo.1964)). "Non-contractual indemnity is a right which allows one who without any fault on his or her part is exposed to liability because of the wrong-doing of another to recover from the wrong-doer what he or she has been compelled to pay." Purk, 817 S.W.2d at 917 (citing Campbell, 379 S.W.2d at 559). Terracon argues that the Court must dismiss Borax and K.C.1986's claims for indemnification because "indemnity is not allowed among joint tortfeasors." (Sugg. in Supp. at 21). Terracon, however, has failed to present sufficient facts to show that Borax and K.C.1986 are joint tortfeasors as a matter of law. Whether Borax and K.C.1986 are joint tortfeasors and thus not entitled to indemnification from Terracon, in the event that Terracon is held to be at fault, is a genuine question of material fact for which summary judgment is inappropriate.

Accordingly, it is hereby

ORDERED that Terracon's Motion for Summary Judgment (Doc. # 460) is

DENIED as to Count I of Borax's Amended Cross–Claim (Doc. # 251) alleging CERCLA liability;

GRANTED as to Count III of Borax's Amended Cross–Claim (Doc. # 251) alleging a cause of action under the RCRA;

DENIED as to Count VII of Borax's Amended Cross–Claim (Doc. # 251) seeking Indemnity;

GRANTED as to Count V of K.C.1986's Second Amended Complaint (Doc. # 142) alleging Nuisance; and

DENIED as to Count VIII of K.C.1986's Second Amended Complaint seeking Indemnity. It is further

ORDERED that U.S. Borax's Cross–Motion for Partial Summary Judgment against Terracon (Doc. # 475) is DENIED.